# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRAVIS GEORGE MISKAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-646-HE |
| | ) | |
| W.A. SHERROD, E. VILLA WILLIAMS, | ) | |
| S. QUERO, O. BAHERINI, R. FLOWERREE, | ) | |
| T. TABER, R. BURTON, MIKE WILLIAMS, | ) | |
| J.W. MOSS, CHAPLAIN WRIGHT, MOAD, | ) | |
| L. LECLAIR, M. FRINK, J. ROBERTSON, | ) | |
| D. FOSTER, BASCO, BLACK KETTER, | ) | |
| HALLAHAN, LAUDERDALE, CRADDOCK, | ) | |
| BRONSON, PALOSIO, AND SEAY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Travis George Miskam, an inmate appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights. The matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). Before the Court is a Motion to Dismiss filed by Defendants J. Moss, M. Williams, T. Taber, R. Flowerree, Moad, Wright, Burton, Villa-Williams and Quero (ECF No. 49), to which Plaintiff has responded. (ECF No. 60). Defendants LeClair, Frink, Robertson, Foster, Blackletter, Hallahan, Lauderdale and Craddock either joined in the Motion to Dismiss or adopted and incorporated the

arguments within their own Motions to Dismiss. (ECF Nos. 50, 68 & 70).[1] For the reasons set forth below and pursuant to the Court's screening process, the undersigned recommends Plaintiff's Counts I-III be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted. Additionally, it is recommended that Defendants' Motion to Dismiss be **GRANTED** as to Count IV based on Plaintiff's failure to exhaust his administrative remedies.

I. **BACKGROUND AND ISSUES PRESENTED**

Plaintiff is a California inmate confined at North Fork Correctional Facility ("NFCF") in Sayre, Oklahoma. By this action, Plaintiff sues twenty-three Defendants, in their individual and official capacities, alleging that his constitutional rights under the First, Eighth and Fourteenth Amendments have been violated. (ECF No. 46). In his First Amended Complaint (ECF No. 46), Plaintiff purports to set forth four causes of action.

First, Plaintiff alleges Defendants have violated his due process rights by denying him a fair and adequate grievance procedure. (ECF No. 46:5-8). Second, Plaintiff contends that the Eighth Amendment's prohibition against cruel and unusual punishment is being violated based on NFCF's alleged failure to provide a daily supply of milk with Plaintiff's meals. (ECF No. 46:5, 7-9). In a closely related claim, Plaintiff claims that his Eighth Amendment rights are also being violated as a result of the presence of trans-fat in the non-dairy drink substitute NFCF serves with meals. (ECF No.

---

[1] To date, Defendants Sherrod, Baherini, Bronson, Palosio, and Seay have not been served. (ECF Nos. 23-26, 55). Additionally, Defendant Basco was served with the original Complaint but has not been served with the First Amended Complaint. (ECF Nos. 16, 54).

46:5, 7-8). Finally, Plaintiff, a member of the Asatru religious faith, which celebrates a Winter Solstice meal on December 21st, contends that he was denied equal protection of the law when NFCF delayed the 2013 Winter Solstice meal until September 24, 2014. (ECF No. 46:6, 9; ECF No. 60:8).[2] He contends that other faith groups receive their requested religious banquets without delay. (ECF No. 46:6, 9). Defendants have requested dismissal of each of Plaintiff's claims based solely on their contention that Plaintiff failed to exhaust all available administrative remedies prior to filing his lawsuit, as required under the Prison Litigation Reform Act of 1995 ("PLRA"). (ECF No. 49).

## II. SCREENING

### A. Standard for Screening Complaints

Pursuant to 28 U.S.C. § 1915(e)(2)(B), in any action wherein a plaintiff is proceeding *in forma pauperis*, the Court shall dismiss a claim at any time if the Court determines that it fails to state a claim upon which relief can be granted. *See also* 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section 1983 of this title, . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the

---

[2] Plaintiff initially filed this lawsuit on June 9, 2014, *see* ECF No. 1, at which time the December 21, 2013 Winter Solstice meal had not been provided, though, as explained in more detail herein, it had recently been scheduled for September 21, 2014. (ECF No. 46-6:33). Plaintiff continued to assert this claim in his First Amended Complaint filed on November 25, 2014 alleging a violation of his due process and equal protection rights. (ECF No. 46:9). In his Response to Defendants' Motion to Dismiss, he specifically stated that the ten-month delay was a violation of his civil rights. (ECF No. 60:8). Thus, liberally construing Plaintiff's pleadings, *see Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007), the undersigned construes this claim as arising under the First and Fourteenth Amendments as an alleged infringement on Plaintiff's religious practices and a violation of his right to equal protection.

action . . . fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."). In such circumstances, the Court is required to dismiss a complaint or any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.*

### B. Claims Against Defendants in their Official Capacities

In his First Amended Complaint, Plaintiff stated that he is naming Defendants in both their individual and official capacities and is seeking compensatory and punitive damages, as well as injunctive relief. (ECF No. 46:5, 11). "To state a claim under [42 U.S.C.] § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Neither a state, a state agency, nor an official of the State acting in his or her official capacity, is a "person" for purposes of § 1983. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 64, 71 (1989). *See also Branson School District RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) (noting that when suit is brought against a state official in his official capacity, the real party in interest is the state). Thus, Eleventh Amendment sovereign immunity precludes suits against states, state agencies and state officials sued in their official capacities.

Unlike other jurisdictional issues, a state may waive the defense of sovereign immunity. The State of Oklahoma has not, however, waived its sovereign immunity

defense against § 1983 claims brought in federal district court cases. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994). It is therefore recommended that all official capacity claims seeking monetary damages against Defendants be dismissed with prejudice based on failure to state a claim upon which relief may be granted.

### C. Count I: Interference with Administrative Remedies

Plaintiff contends that Defendants violated his due process rights based on their alleged interference with his efforts to exhaust his administrative remedies. (ECF No. 46:5-8). However, prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *Murray v. Albany Cnty. Bd. of Cnty. Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000). ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)). Further, a state's voluntary provision of an administrative grievance process does not create a liberty interest in that process. *Boyd v. Werholz*, 443 F. App'x 331, 332 (10th Cir. 2011) (citing *Bingham v. Thomas,* 654 F.3d 1171, 1177–78 (11th Cir. 2011) (observing that inmates have no constitutionally-protected liberty interest in access to prison grievance procedure); *Buckley,* 997 F.2d at 495 ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest ....")). *See also Spry v. McKune*, 479 F. App'x

180, 181 (10th Cir. 2012) (affirming district court's dismissal of plaintiff's due process claim premised upon unavailability of administrative remedy for failure to state a claim upon which relief can be granted); *Anderson v. Colo. Dep't of Corr.*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner").

This is not to say that a correctional facility can freely obstruct an inmate's ability to use the grievance process. "Where prison officials thwart or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). However, as established above, inmates do not have a protected liberty interest in pursuing formal administrative procedures and therefore, any separate legal claim based on the same inherently fails. Accordingly, the undersigned recommends that Plaintiff's Count I based on interference with his attempts to exhaust his administrative remedies be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### D. Counts II & III: Dairy and Non-Dairy Substitute in NFCF Meals

Plaintiff alleges that his Eighth Amendment rights were violated based on NFCF's failure to serve milk daily and by the presence of trans-fat in the non-dairy drink substitute. Specifically, Plaintiff contends that due to the lack of milk served with meals,

he is not receiving a sufficient daily caloric intake. Plaintiff stated in his First Amended Complaint, "On one occasion I went nine days without dairy in my diet," (ECF No. 46:8), while in his Response to Defendants' Motion to Dismiss, he stated, "Plaintiff went 208 days without dairy in my diet." (ECF No. 60:6). He also complains that they occasionally run out of the non-dairy drink substitute before they reach his cell. (ECF No. 46:8; ECF No. 60:6).

Prison officials must ensure that prisoners are afforded "humane conditions of confinement," such as "adequate food, clothing, shelter, and medical care," and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). In this regard, "[a] State must provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'" *Strope v. Sebelius*, 189 F. App'x. 763, 765 (10th Cir. 2006) (quoting *Ramos v. Lamm,* 639 F.2d 559, 570-71 (10th Cir. 1980)). However, "while the Eighth Amendment guarantees that inmates will receive the basic necessity of nutritionally adequate food, *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006), they are not entitled to the "amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). To state an adequate claim related to food deprivation, a prisoner must allege both (1) a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities" and (2) "deliberate

indifference" by prison officials to a "substantial risk of serious harm to an inmate." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (internal quotations omitted).

In support of his First Amended Complaint, Plaintiff submitted several documents, including various Incident Reports and Form 22s, reflecting Plaintiff's complaint that on specific dates officials ran out of the non-dairy drink substitutes and/or that he was sometimes offered Kool-Aid instead of milk, thereby denying him a sufficient "daily caloric intake" on those occasions. Plaintiff made these complaints regarding three days in April 2014, five days in May 2014, two days in June 2014, one day in July 2014, four days in August 2014, two days in September 2014, three days in October 2014, and two days in November 2014. (ECF No. 46-1:2-14). While these incidents are likely not the totality of days Plaintiff did not receive milk or a non-dairy drink substitute, they do reflect the sporadic nature of Plaintiff's complaints in this regard. Sporadic denial of milk and/or being served a non-dairy drink substitute, even one containing trans-fat, does not equate to a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities," *see Barney*, 143 F.3d at 1310, nor does it equate to the "wanton and obdurate disregard for inmate health and safety" that an Eighth Amendment claim requires. *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). *See also Anderson–Bey v. Dist. of Columbia*, 466 F.Supp.2d 51, 63–64 (D.C. Cir. 2006) (holding that denial of food for ten to fifteen hours was insufficient to state an Eighth Amendment claim, especially when the plaintiffs failed to identify any serious harm suffered as a result); *Caldwell v. Caesar*, 150 F.Supp.2d 50, 65 (D.D.C. 2001) (to

state an Eighth Amendment claim for deprivation of adequate diet, prisoner must allege the deprivation was "so lacking in nutrition on sufficient occasions as to deprive him of adequate food necessary to maintain his health"); *Gardner v. Beale*, 780 F.Supp. 1073 (E.D.Va. 1991) (holding there was no Eighth Amendment claim stated where prisoner was fed two meals a day for multiple days with an 18–hour gap between meals, but received adequate nutrition and suffered only mental anguish); *Toews v. Milyard*, 563 F. App'x 640, 643, 645-66 (10th Cir. 2014) (finding that an inmate "denied nine consecutive meals over a three-day period … [was] insufficient to state a claim absent facts suggesting an objectively serious problem and a culpable state of mind on the part of prison officials, …. A one-time denial of 'nine consecutive meals' during a three-day period for ... infractions simply does not rise to the level of a constitutional violation in the absence of any lasting harm or injury and a culpable state of mind."); *Richmond v. Settles*, 450 F. App'x 448 (6th Cir. 2011) (finding the withholding of food, specifically seven meals over a period of six days, "while it may result in some discomfort to the prisoner, does not result in a health risk to the prisoner sufficient to qualify as a 'wanton infliction of pain' where the prisoner continues to receive adequate nutrition.").

Plaintiff has not alleged any actual injury or damage as a result of not having a daily serving of milk, nor has he specified any harm incurred related to the quality of the non-dairy substitute drink. Instead Plaintiff has asserted conclusory allegations that the lack of milk or a non-dairy drink means that he is not being served a sufficient "daily caloric intake." These allegations, even if true, do not "pose an unreasonable risk

of damage to [Plaintiff's] future health," *Helling v. McKinley*, 509 U.S. 25, 35 (1993), nor do they deprive him of "adequate food necessary to maintain his health." *Caldwell*, 150 F.Supp.2d at 65. Accordingly, the undersigned recommends Plaintiff's Counts II and III be dismissed for failure to state a claim upon which relief can be granted.

### III. DEFENDANTS' MOTION TO DISMISS[3]

#### A. Standard of Review

For purposes of deciding this Motion, Plaintiff's factual allegations are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "The court's

---

[3] Based on the above recommendations to dismiss Counts I-III, the undersigned will only address Defendants' Motion to Dismiss with regard to arguments supporting their request for dismissal of Count IV.

function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

### B. The Exhaustion Requirement

The PLRA requires a prisoner to exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides as follows: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* "[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007).

A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Pen.,* 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects

in exhaustion were not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir. 2007).

### C. NFCF's Exhaustion Process

As previously noted, Plaintiff is a California inmate housed at NFCF. Because Plaintiff is a California prisoner, the administrative process is governed by Title 15 of the California Code of Regulations. *See Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009) (describing Title 15 of the California Code of Regulations as the "multi-tiered administrative scheme for inmate grievances"). When a California prisoner at NFCF wants to complain about a decision at his facility, he must begin the administrative process on the First Level by filing an appeal of the subject decision on a "Form 602" with the facility's grievance coordinator. *See Brodheim*, 584 F.3d at 1265 (citing Cal. Code Regs. tit. 15, § 3084.5(b)). If dissatisfied with the response, the inmate must then move to the Second Level of the administrative process by filing an appeal to the NFCF warden within 15 days. *Id.* (citing Cal. Code Regs. tit. 15, §§ 3084.5(c); 3084.6(c)). If the prisoner remains dissatisfied, he can proceed to the Third Level of the process by filing an appeal to the California Department of Corrections and Rehabilitation. *Id.* (citing Cal. Code Regs. tit. 15, § 3084.5(d)).

### D. Plaintiff's Efforts to Exhaust

On March 1, 2014, Plaintiff filed a Form 602 appeal, recorded as #NF-14-3-1 and #CBU D-14-1624, regarding the fact that he, as one of the inmates of Asatru faith, had requested but had yet to receive his December 21, 2013, Winter Solstice meal. (ECF

No. 46-6:17-18). The appeal was initially cancelled based on untimeliness, pointing out that the Winter Solstice meal was requested for December 21, 2013, and Plaintiff's Form 602 appeal was submitted on March 1, 2014. (ECF No. 46-6:28). Plaintiff successfully appealed this cancellation arguing that the violation was ongoing and therefore, his March 1, 2014 appeal was not untimely. (ECF No. 46-6:5-6). On May 8, 2014, an official issued a letter agreeing with Plaintiff and overturning the previous cancellation, noting that Plaintiff had submitted proof of numerous Form 22s he had filed between the requested Winter Solstice meal and the March 1st Form 602. (ECF No. 46-6:5-6).

On May 9, 2014, an official sent Plaintiff notice that, based on his successful appeal of the initial cancellation, his Form 602 appeal was being sent back to the First Level for consideration on the merits. (ECF No. 46-6:13). On May 16, 2014, an official issued a letter to Plaintiff notifying him that his Form 602 appeal had been accepted at the First Level and they would issue a response by June 30, 2014. (ECF No. 46-6:14). On May 22, 2014, NFCF issued numerous Memorandums that included the following notices and instructions to NFCF staff and officials:

(1). A Make-Up 2013 Winter Solstice meal would be held on September 24, 2014 for inmates of the Asatru/Odinst faith (ECF No. 46-6:33)[4];

---

[4] Officials also released a Memorandum dated May 22, 2014 indicating that the Make-Up 2013 Winter Solstice Meal would be held on September 23, 2014. (ECF No. 46-6:30). Though the reason for the two dates is unclear, Plaintiff acknowledges in his Response to Defendants' Motion to Dismiss that the Make-Up Winter Solstice Meal took place on September 24, 2014. (ECF No. 60:8).

(2). A Summer Solstice meal would be held on June 20, 2014 for inmates of the Asatru/Odinist faith (ECF No. 46-6:32);

(3). On December 21, 2014 – January 2, 2015, inmates of the Asatru/Odinist faith would celebrate their Winter Solstice, including a Winter Solstice meal on December 21, 2014 (ECF No. 46-6:31).

Presumably in light of these pronouncements, on September 9, 2014, Plaintiff received a form indicating that his appeal was being cancelled because the issue was resolved. (ECF No. 46-6:15). Plaintiff attempted to appeal this cancellation and the appeal was rejected on October 19, 2014 with a notification that "the appeal issue or complaint emphasis has been changed at some point in the process to the extent that the issue is entirely new, and the required lower levels of review and assessment have thereby been circumvented." (ECF No. 46-6:2).

Plaintiff's initial appeals were based on the fact that he had not been provided a Winter Solstice meal, *see* ECF No. 46-6:5-6, 13, 14, 17-18, 28, but, as indicated by the May 22, 2014 Memorandums and the September 9, 2014 administrative response, that issue was resolved. (ECF No. 46:6, 9; ECF No. 60:8). Indeed, Plaintiff acknowledges that he received the make-up Winter Solstice meal on September 24, 2014. (ECF No. 46-6:6, 9; ECF No. 60:8).

Plaintiff's remaining issue is the ten-month delay that occurred before Plaintiff ultimately received his Winter Solstice meal, while inmates of other faiths faced no such delay upon requesting their religious banquets. (ECF No. 46-6:6, 9; ECF No. 60:8). If such a delay were motivated by a discriminatory purpose, then these circumstances may support an equal protection claim. *Roberts v. Champion*, 255 F.Supp.2d 1272,

1290 (N.D. Okla. 2003) (citing *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Moreover, "[u]nder the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted); *McKinley v. Maddox*, 493 F. App'x 928, 932 (10th Cir. 2012); *Makin v. Colo. Dept. of Corrs*, 183 F.3d 1205 (10th Cir. 1999). In order to state a constitutional violation based on a free-exercise claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs" based on "conscious or intentional interference." *Gallagher*, 587 F.3d at 1069-70. Once the prisoner satisfies this initial step, then defendants "may identify the legitimate penological interests that justified the impinging conduct." *McKinley*, 493 F. App'x at 932.

Thus, the ten-month delay Plaintiff experienced *may* be the basis of a constitutional claim under § 1983, however, the PLRA requires that Plaintiff fully exhaust his administrative remedies prior to filing a lawsuit based on the same. *Jones,* 549 U.S. at 211. In his Response to Defendants' Motion to Dismiss, Plaintiff does not argue that he ever exhausted this separate claim. Instead, he merely complains that his appeal of the September 9, 2014 notice was cancelled. (ECF No. 60:9). However, the delay is a separate issue than that raised in his initial appeals and addressed by the September 9, 2014 notice. Further, even though it is likely that monetary damages would be the only available relief, exhaustion is still required. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Even when the prisoner seeks relief not

available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id.*

In light of the undisputed facts, it is clear Plaintiff did not exhaust his administrative remedies with regard to Count IV, as required by 42 U.S.C. § 1997e(a). Though he began the administrative process on the related issue of not receiving his Winter Solstice meal, Plaintiff never completed, nor even began, the administrative process with regard to the delay in receiving his Winter Solstice meal, which is fatal to federal judicial review of his claim. *Id.* Accordingly, the undersigned recommends Defendants' Motion to Dismiss with regard to Count IV be granted.

Additionally, with regard to the unserved Defendants, *supra.*, it is recommended that Count IV as asserted against each of them be dismissed *sua sponte,* pursuant to 28 U.S.C. § 1915(e)(2), on the basis of failure to exhaust administrative remedies. *See Laubach v. Scibana*, No. CIV-05-1294-F, 2008 WL 281545, at *13 (W.D. Okla. Jan. 31, 2008) (dismissing claims against unserved defendants *sua sponte* under § 1915(e)(2) based upon the fully-developed record that showed that all claims not barred by the statute of limitations were subject to dismissal under the PLRA based on plaintiff's failure to exhaust administrative remedies); *Deere v. Grady County Sheriff*, No. CIV-07-82-W, 2007 WL 4463749, at *1 (W.D. Okla. Dec. 17, 2007) (same). *See Moore v. Thomas*, 653 F.Supp.2d 984, 1003 (N.D. Cal. 2009) ("Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would

be the same as to the unserved defendants, (2) those issues have been briefed, and (3)[the p]laintiff has been provided an opportunity to address the controlling issues.").

## RECOMMENDATION

After careful consideration of the issues in this case, it is recommended that Plaintiff's Counts I-III be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted. It is further recommended that Plaintiff's Counts I-IV against Defendants in their official capacities seeking monetary damages be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted. Additionally, it is recommended that Defendant's Motion to Dismiss Plaintiff's Count IV based on Plaintiff's failure to exhaust his administrative remedies be **GRANTED**. Finally, it is recommended that Count IV as asserted against each of the unserved Defendants be **DISMISSED without prejudice**, pursuant to 28 U.S.C. § 1915(e)(2), on the basis of failure to exhaust administrative remedies.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is hereby advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **June 29, 2015**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF THE REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** on June 11, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE